By the Court. — Sanford, J.
—This action was brought for the recovery of damages alleged to have been sustained by the plaintiff by reason of defendants’ breach of an agreement to compensate him for an injury to his business, occasioned by their running needles through the walls of the premises occupied by him, in order to shore up the building while excavations were making upon adjoining premises. The plaintiff was a tenant of defendants’, and held the premises occupied by him under a lease from them which reserved to the landlord or his agent, the right of entering the premises *165 “at reasonable hours in the day-time, to examine or to make such alterations and repairs therein as shall be necessary for the preservation thereof, or of the building.” The complaint alleged that before the insertion of such needles, the defendants agreed to allow the plaintiff one quarter’s rent with the understanding that the needles were not to remain more than two weeks; but that defendants wrongfully allowed them to remain for nearly eight weeks, against the plaintiff’s will, and to the injury of his business.
Upon the trial, the plaintiff testified that upon being notified by the persons who were about to commence the work that such needles were to be inserted, he refused to permit them to be put in until he saw Mr. Mealio, (one of the defendants). That he went with the foreman who had thus notified him to Mr. Lewis Mealio, and objected to the introduction of the needles as they would inconvenience him a good deal; that, on being asked by Mealio what he wanted, he said he wanted some equivalent, because they would upset him in his business; that Mealio then asked the foreman how long the needles would be in ; that the foreman replied, about two weeks; that Mealio again asked what he wanted, and that he thereupon demanded $100 ; that, after some conversation as to the amount of rent he was paying, viz., $350 per annum, Mealio said, “I will give you a quarter’s rent, and, if it is any longer than the two weeks, I will make it right with you.” That, under that condition, he let the men come in with the needles. They came in on February 17 or 18, and remained till April 8, 1867, materially obstructing him in his trade during the whole period.
The testimony on the first trial was substantially to the same effect.
The court of appeals held that this evidence established the liability of the defendants for the injuries *166 committed, and made out a prima facie case against them, notwithstanding the lease; and that, in the absence oí evidence tending to show that the alterations were necessary to the preservation of the building, and that the time employed was not unreasonable, the lease constituted no justification. It further held that, without regard to this question, the plaintiffs were entitled to recover under defendants’ agreement to pay them a certain amount for the damages sustained ; that there was adequate consideration to support the defendants’ promise in the plaintiff’s claim, to which the defendants assented, of a right to exclude them from inserting the needles,. and having his premises exposed day and night, while the lease only authorized repairs in the day-time.
At the second trial, the defendants gave evidence in contradiction of the plaintiff’s testimony as to the alleged agreement, and also proved, without contradiction, that they were not the owners of the building, but merely lessees thereof; and that the men who inserted the needles were not employed or paid by them, but by their landlord ; and that the work done was necessary for the preservation of the building.
But Lewis Mealio testified that, when the plaintiff complained of the inconvenience to which the insertion of the needles would subject him, and was captious' about it, he said in reply that “if we did not put these things in, we would be liable to the landlord for any damages done to his building,” and the foreman, who was present when the interview between the plaintiff and Mealio occurred, in which the alleged agreement was made, if at all, but who did not hear what passed between them, states that after they had talked together Mealio said to him, “go on and put in the needles; ” that it was “ all right.”
There is, therefore, evidence tending to show that. the work was done by defendants’ direction, under an *167 agreement between them and the plaintiff that compensation should be made to the latter for the inconvenience to him thereby occasioned. The agreement, indeed, is not denied in the answer, and the decision of the court of appeals is to the effect that there was ample consideration to support it. Such evidence sustains the allegations of the complaint, and the only effect of testimony in contradiction is to require the submission of the disputed points to the jury. The plaintiff allowed such testimony to come in without objeótion, notwithstanding the implied admission of the answer, and only asked that the jury might be allowed to pass upon this question, and upon ah the questions in the case.
The court refused to permit the case to go to the jury, except upon the question “whether the needles were permitted to remain an unreasonable length of time.” The submission of that question, alone, involved a determination by the court of defendants’ liability only in case of unreasonable delay on their part in removing the needles; but, if the agreement was made as alleged, and was valid, the plaintiff was entitled to recover under it “what was right," whether the needles remained for an unreasonable length of time or not, and the amount of his just and reasonable compensation was a question for the jury.
If the agreement was not made as alleged, the pleadings presented the issue whether the injuries complained of were committed by the defendants; if so, whether, in committing them, they exceeded their rights as reserved by the lease; and, finally, in such case, what amount would be adequate as indemnity to the plaintiff. Upon all of these questions there was conflicting evidence. The refusal, therefore, to submit the case to the jury upon any other question than that spepified by the court, and the dismissal of the complaint upon the plaintiff’s declining to have that *168 question, alone submitted, and after his request to be allowed to go to the jury upon the whole case and on all the questions involved, including the question whether there was an agreement between Mealio and the plaintiff, constituted error for which a new trial should be granted. It involved a determination adverse to the plaintiff, of the question as to the making of such agreement; whereas, under the omission from the answer of any denial of the making thereof, the least that the plaintiff could ask was that the conflicting evidence on the subject should be passed upon by the jury. The defendant’s counsel urges that the agreement, if made, was void for lack of consideration, and it would seem that the ruling of the court below was based upon that assumption. But the court of appeals, as I have already intimated, seems to have adopted the opposite view, and to have held the consideration sufficient, and the defendants’ promise binding, if made.
Were the question an open one, I think it sufficiently appears from the evidence that the defendants had a direct interest in having the building shored up and the needles inserted; that the plaintiff strenuously objected, claiming that they would interfere with his business, and that he had the right to exclude them; that the defendants, by negotiating and contracting with him, acknowledged that there was color for his objection; and I am of opinion that, under those circumstances, his concession of the privilege constituted an adequate consideration for their promise to compensate and indemnify him for the inconvenience thus occasioned.
The judgment must be reversed and a new trial ordered with costs to the appellant to abide the event.
Sedgwick, J., concurred.